

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| KIMBERLY JACKSON,<br>  PLAINTIFF, | §<br>§<br>§ | |
| VS. | § | CIVIL ACTION NO. 4:19-CV-00289-A |
| | § | |
| ANDREW SAUL,<br>COMMISSIONER OF SOCIAL<br>SECURITY,<br>  DEFENDANT. | §<br>§<br>§<br>§<br>§ | |

### FINDINGS, CONCLUSIONS AND RECOMMENDATION
### OF THE UNITED STATES MAGISTRATE JUDGE
### AND
### NOTICE AND ORDER

This case was referred to the United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636(b). The Findings, Conclusions and Recommendation of the United States Magistrate are as follows:

### FINDINGS AND CONCLUSIONS

#### I.  STATEMENT OF THE CASE

Plaintiff Kimberly Jackson ("Jackson") filed this action pursuant to Sections 405(g) and 1383(c)(3) of Title 42 of the United States Code for judicial review of a final decision of the Commissioner of Social Security denying her claim for disability insurance benefits ("DIB") under Title II of the Social Security Act ("SSA"). On March 14, 2016, Jackson applied for DIB, alleging that her disability began on October 1, 2012.[1] (Transcript ("Tr.") 15; see Tr. 167–68.)

Her application was denied initially and on reconsideration, and Jackson requested a hearing before an administrative law judge ("ALJ"). (Tr. 15; see Tr. 72–106.) On February 6,

---

[1] In her application, Jackson claimed her disability began on October 1, 2012. (Tr. 15, 167.) However, at the hearing before the Administrative Law Judge, Jackson amended the onset of disability date to April 17, 2014. (Tr. 40–41.)

1

2018, the ALJ held a hearing, and, on August 24, 2018, the ALJ issued a decision that Jackson was not disabled. (Tr. 12–71.) Jackson filed a written request for review, and the Appeals Council, on March 15, 2019, denied her request for review, leaving the ALJ's decision to stand as the final decision of the Commissioner. (Tr. 1–6.)

## II.   STANDARD OF REVIEW

Disability insurance is governed by Title II, 42 U.S.C. § 404 *et seq.*, and numerous regulatory provisions. *See* 20 C.F.R. Pt. 404. The SSA defines "disability" as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. §§ 423(d), 1382c(a)(3)(A). To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. 20 C.F.R. § 404.1520.

First, the claimant must not be presently working at any substantial gainful activity. 20 C.F.R. § 404.1520(b). "Substantial gainful activity" is defined as work activity involving the use of significant physical or mental abilities for pay or profit. *See id.* § 404.1527. Second, the claimant must have an impairment or combination of impairments that is severe. *Id.* § 404.1520(c); *see also Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000). Third, disability will be found if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments ("Listing"). 20 C.F.R. Pt. 404 Subpt. P, App. 1; 20 C.F.R. § 404.1520(d). Fourth, if disability cannot be found based on the claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to her past relevant work. 20 C.F.R. § 404.1520(f). And fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity, age, education, and past work experiences. *Id.* §

404.1520(g); *Crowley v. Apfel*, 197 F.3d 194, 197–98 (5th Cir. 1999). At steps one through four, the burden of proof rests upon the claimant to show she is disabled. *Crowley*, 197 F.3d at 198. If the claimant satisfies this responsibility, the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of her existing impairments. *Id.* If the Commissioner meets his burden, it is up to the claimant to then show that she cannot perform the alternate work. *See Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards, and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). An ALJ's decision is not subject to reversal, even if there is substantial evidence in the record that would have supported the opposite conclusion, so long as substantial evidence supports the conclusion that was reached by the ALJ. *Dollis v. Astrue*, No. 4:08-CV-00503-A, 2009 WL 1542466, at *5 (N.D. Tex. Jun. 2, 2009). Substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id.* A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Id.* This Court may neither reweigh the evidence in the record, nor substitute its judgment for the Commissioner's, but will carefully scrutinize the record to determine if substantial evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383.

### III.  ISSUES

In her brief, Jackson presents the following issues:

1. Whether the ALJ erred in finding that Jackson did not meet or equal section 12.02 of the Listing;

2. Whether the ALJ erred in rejecting the opinion of state agency psychological consultant Deborah Whitehead Gleaves, Ph.D. ("Dr. Gleaves"), as it relates to the special technique;

3. Whether the ALJ erred in rejecting the opinion of Jackson's examining physician, Mara-Lysa Anthony, Psy.D. ("Dr. Anthony"); and

4. Whether the ALJ erred in failing to acknowledge the amended onset date.

(Plaintiff's Brief ("Pl.'s Br.") at 8–19.)

### IV.  ALJ DECISION

In his August 24, 2018 decision, the ALJ concluded that Jackson was not disabled within the meaning of the SSA. (Tr. 15–32.) In making his determination, the ALJ proceeded to follow the five-step sequential evaluation process set forth above. (Tr. 16–17.) At Step One, the ALJ found that Jackson did not engage in substantial gainful activity during the period from her alleged onset date[2] through her date last insured of March 31, 2016. (Tr. 17.) At Step Two, the ALJ found that Jackson had the following "severe" impairments: (1) multilevel degenerative disc disease of the cervical spine; (2) fibromyalgia; (3) hyperparathyroidism; (4) anemia; (5) hypertension with history of mitral valve prolapse; (6) history of treatment for hepatitis C; (7) history of gastric bypass; (8) conversion disorder; (9) depressive disorder; (10) neurocognitive disorder with symptoms of aphasia; and (11) alcohol abuse. (Tr. 18.)

Thereafter, at Step Three, the ALJ stated that Jackson did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed

---

[2] The evidence and record are herein analyzed with regard to the original alleged onset date, October 1, 2012 as that is the date referenced by the ALJ in his decision.

impairments in the Listing. (Tr. 19.) Next, as to Jackson's residual functional capacity ("RFC"), the ALJ stated:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and the following: the claimant could stand and walk for six hours, sit for six hours, and perform occasional postural activities with no climbing of ladders, ropes, or scaffolds. The claimant needed to alternate between sitting and standing every hour for a few minutes. The claimant could never work around hazards. The claimant was limited to simple tasks (defined as routine, repetitive tasks with little variation in duties and involving only simple judgment-making).

(Tr. 25 (emphasis omitted).) At Step Four, the ALJ found that Jackson was unable to perform her past relevant work as a nurse, receptionist, home attendant, or deli worker. (Tr. 30.) However, the ALJ found, at Step Five, that there were jobs that existed in the national economy that Jackson could perform. (Tr. 31.) Accordingly, the ALJ found that Jackson was not under disability, as defined in the SSA, from the alleged onset date through March 31, 2016, the date last insured. (Tr. 32.)

## V.   DISCUSSION

### A.   Section 12.02 of the Listing

In her brief, Jackson argues that, if the ALJ had properly weighed the evidence and the opinions of Dr. Gleaves, he would have concluded that Jackson's impairments satisfied section 12.02 of the Listing. (Pl.'s Br. at 8.) Specifically, Jackson claims that she satisfies section 12.02 because she satisfies both the Paragraph A criteria as well as the Paragraph B criteria. (Pl.'s Br. at 9.) As to the paragraph A criteria, Jackson argues that she has a significant cognitive decline in (1) complex attention, (2) executive function, and (3) learning and memory. (Pl.'s Br. at 9–10.) As to the paragraph B criteria, Jackson claims that she had two "marked" limitations in the ability to concentrate, persist, or maintain pace and interact with others. (Pl.'s Br. at 10–11.)

Thus, Plaintiff argues the ALJ erred in not finding she met section 12.02 of the Listing. (Pl.'s Br. at 8–11.)

To obtain a disability determination at Step Three, a claimant must show that her impairments meet or equal one of the impairments in the Listing. 20 C.F.R. § 404.1520(a)(4)(iii). As a threshold matter, the ALJ is responsible for ultimately deciding the legal question whether a listing is met or equaled. Social Security Ruling ("SSR") 96-6p, 1996 WL 374180, at *3 (S.S.A. July 2, 1996). Whether a claimant's impairment meets the requirements of a listed impairment is usually more a question of medical fact than opinion, because most of the requirements are objective and simply a matter of documentation, but it is still an issue ultimately reserved to the Commissioner. SSR 96-5p, 1996 WL 374183, at *3 (S.S.A. July 2, 1996). When determining whether an impairment medically equals a listing, the Commissioner considers all relevant evidence in the record about the impairments, including findings from one or more medical or psychological consultants designated by the Commissioner. 20 C.F.R. § 404.1526(c).[3] Medical equivalence is found when an impairment "is at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 404.1526(a).

The claimant has the burden of proving that her impairment or combination of impairments meets or equals a listing. *See Sullivan v. Zebley*, 493 U.S. 521, 531, *superseded by statute on other grounds as stated in McCloskey v. Colvin*, No. CV 15-5223-SP, 2016 WL 5745077 at *7 (D. Cal. Sept. 30, 2016); *Selders v. Sullivan*, 914 F.2d 614, 619. "For a claimant to show that his impairment matches [or meets] a listing, it must meet *all* of the specified medical criteria." *Zebley*, 493 U.S. at 530 (emphasis in original). An impairment, no matter how

---

[3] Relevant evidence does not include the claimant's vocational factors of age, education, and work experience. 20 C.F.R. § 404.1526(c).

6

severe, does not qualify if that impairment exhibits only some of the specified criteria. *Id.* The court will find that substantial evidence supports the ALJ's finding at Step Three if the plaintiff fails to demonstrate the specified medical criteria. *Selders*, 914 F.2d at 619–20.

"Although it is not always necessary that an ALJ provide an exhaustive discussion of the evidence, bare conclusions, without any explanation for the results reached, may make meaningful judicial review of the Commissioner's final decision impossible." *Inge ex rel. D.J.I. v. Astrue*, No. 7:09-cv-95-O, 2010 WL 2473835, at *9 (N.D. Tex. May 13, 2010) (citing *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007)). "However, before the absence of reasons for adverse findings requires rejection of the unfavorable decision, a court must determine whether the error was harmless." *Id.*; *see Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) ("Procedural perfection in administrative proceedings is not required" as long as "the substantial rights of a party have [not] been affected."). To be entitled to relief, the claimant must establish that the ALJ erred and that the ALJ's error casts into doubt the existence of substantial evidence to support the ALJ's decision. *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988).

As relevant here, section 12.02 of the Listing, which deals with neurocognitive disorders, states:

> A. Medical documentation of a significant cognitive decline from a prior level of functioning in *one* or more of the cognitive areas:
>
>    1. Complex attention;
>    2. Executive function;
>    3. Learning and memory;
>    4. Language;
>    5. Perceptual-motor; or
>    6. Social cognition.
>
>    AND

  B. Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning:

    1. Understand, remember, or apply information.
    2. Interact with others.
    3. Concentrate, persist, or maintain pace.
    4. Adapt or manage oneself.

20 C.F.R. Part 404, Subpt. P, App. 1, § 12.02 (internal citations omitted).

In this case, Jackson's main argument is that the ALJ erred by failing to find that her impairments meet section 12.02 of the Listing at Step Three as she claims she satisfies both Paragraphs A and B of the Listing based on the opinion of Dr. Gleaves. (Pl.'s Br. at 9.) Although Jackson presents the opinion of Dr. Gleaves as evidence that she meets the section 12.02 criteria, there are contrasting opinions made by state agency psychological consultants, Sarah Jackson, Ph.D. ("SAPC Jackson") and Leif Leaf, Ph.D. ("SAPC Leaf"), which state that Jackson does not meet paragraph B criteria of section 12.02. (Tr. 24; *see* Tr. 72–105, 457–466.) Relying on the opinions of SAPC Jackson and SAPC Leaf, as well as on other evidence in the record, the ALJ stated:

> The severity of [Jackson's] mental impairments, considered singly and in combination, . . . did not meet or medically equal the criteria of Listing[] 12.02 . . . . . In making this finding, the undersigned has considered whether the 'paragraph B' criteria were satisfied. . . .
>
> . . . .
>
> In understanding, remembering, or applying information, the claimant had *mild* limitation. The claimant complained of several issues in this area, including with comprehending or completing tasks, remembering to take her medication, and following instructions, among others. Somewhat consistently, there is an apparent history of depressive and anxious feelings secondary to grief and her physical symptoms. At the same time, however, this same body of evidence reflects generally limited mental health treatment consisting of no more than routine and conservative medication management and minimal therapy. And, with such treatment alone, the claimant admitted to being capable of a wide range of activities, including sustaining to a daily routine, adhering to medical instructions, and describing her symptoms to others. She only sporadically

presented with any apparent psychological abnormalities. Such behavior, particularly in combination with the limited treatment in the record, persuasively indicates that the claimant remained substantially capable of understanding and learning terms, asking and answering questions, and sequencing at least simple activities. As such, the undersigned finds that the claimant had only *mild* restrictions in understanding, remembering, or applying information.

In interacting with others, the claimant also had *mild* limitation. As above, the available mental health treatment of record is grossly conservative and routine in nature. In fact, the claimant admitted that she could interact normally with others and getting along with others. Tellingly, the claimant at no time demonstrated any problems interacting with the various medical professionals cited to in the record, including in-person consultative examination. The undersigned is nonetheless mindful that the claimant repeatedly attested to broad feelings of sadness, depression, social paranoia, and heightened irritability, for example. Even despite this evidence, however, the totality of the mental health treatment of record fails to show that the claimant had more than minimal limitations with initiating or sustaining conversation, asking for help when needed, or understanding and responding to social cues. Thus, as a whole, the undersigned concludes that the claimant had no more than *mild* difficulties in interaction with others.

Yet, with regard to concentrating, persisting or maintaining pace, the claimant had *moderate* limitation. Like the prior two areas, the record broadly fails to demonstrate that the claimant had any sustained deficits in concentration, attention, and memory. Somewhat to the contrary, the claimant demonstrated that she was not only capable of understanding and following prescribed medication regimen, but also reliably attending regularly scheduled medical appointments, responding to questions, and watching television. At the same time, the undersigned recognizes that the claimant previously displayed some slow and withdraw [sic] behavior, memory deficits, and mental confusion. Most relevantly, the claimant also achieved somewhat blow [sic] average scores on psychological testing in May 2016. Crediting in large part this latter body of evidence then, the undersigned thus finds that the record warrants a finding that the claimant had *moderate* difficulties in concentrating, persisting, or maintaining pace.

As for adapting or managing oneself, however, the claimant again had only *mild* limitation as the record fails to persuasively show that her depressive or neurocognitive disorders substantially diminished her capacity to distinguish between acceptable and unacceptable work performance, make plans independently of others, maintain her personal hygiene and attire appropriate to a work setting, and otherwise manage her psychologically based symptoms with the benefit of only routine and conservative prescription medication.

Therefore, because the claimant's mental impairments did not cause at least two "marked" limitations or one "extreme" limitations [sic], the "paragraph B" criteria are not satisfied.

In reaching the above conclusions, the undersigned also considered the opinions of the State agency psychological consultants on initial consideration and reconsideration.

Specifically, on initial consideration in May 2016, State agency psychological consultant Sarah Jackson, Ph.D., reviewed the claimant's record and determined that she had severe somatoform disorder resulting in mild restriction of activities of daily living, mild difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence, and pace, and one or two repeated episodes of decompensation. As a result, Dr. Jackson opined that the claimant had moderate limitations with the following: remembering locations and work-liked [sic] procedures, understanding, remembering, and carrying out very short and simple instructions, maintaining attention and concentration for extended periods, performing activities within a schedule, maintaining regular attendance, being punctual within customary tolerances, sustaining an ordinary routine without special supervision, making simple work-related decision [sic], completing a normal workday and work week without interruptions from psychologically based symptoms, performing at a consistent pace without an unreasonable number and length of rest periods, responding appropriately to changes in the work setting, being aware of normal hazards and taking appropriate precautions, traveling in unfamiliar places or using public transportation, and setting realistic goals or making plans independently of others. Even further, Dr. Jackson stated that the claimant had marked limitations with understanding, remembering, and carrying out detailed instructions. Dr. Jackson simultaneously indicated that the claimant remained capable of understanding, remembering, and carrying out simple instructions, making simple decisions, concentrating for extended periods, interacting with others, and responding to changes. State agency psychological consultant Leif Leaf, Ph.D., thereafter reviewed the claimant's record on reconsideration in October 2016 and largely repeated the conclusions previously set out by Dr. Jackson on initial consideration.

The undersigned gives great weight to Drs. Jackson and Leaf's opinions in this decision. First, Drs. Jackson and Leaf are both State agency consultants familiar with the disability program and its evidentiary requirements and reviewed all the documentary medical evidence available at the time. Second, however, neither Dr. Jackson or Dr. Leaf had the opportunity to independently examine the claimant or review additional evidence obtained at the hearing level. Yet, and even setting this aside, the undersigned finds Drs. Jackson and Leaf's shared opinion to be an entirely accurate representation of all the mental health treatment of record. In reaching this conclusion, the undersigned again emphasizes that the claimant managed to sustain overall mental stability throughout the near entirety

10

of the relevant period with the use of only routine and conservative prescription medication. While the claimant did achieve notably below scores and was observed as having some reduced memory and attention on interview, she simultaneously showed that she remained widely capable of asking and answering questions, stating her own point of view, and maintaining appropriate personal hygiene and attire. To this, the claimant also demonstrated that she could understand and follow medical instructions, interact with all of the medical professionals of record without problems, and make plans independently of others. Given her aforementioned scores and stated issues with memory then, the undersigned therefore concludes that the record supports at most moderate limitations with the claimant's ability to maintain concentration, persistence, or pace consistent with her specific complaints of inability to remember television programs, for example. Drs. Jackson and Leaf's opinions are fully consistent with this evidence. As such, the undersigned gives great weight to their opinions in the present analysis.

(Tr. 21–24 (internal citations omitted) (emphasis added).)

Based upon the findings by the ALJ, which are supported by substantial evidence in the record, the Court concludes that Jackson has failed to meet the diagnostic criteria of Paragraph B of section 12.02 of the Listing.[4] Because there is substantial evidence supporting the ALJ's decision at Step Three, the ALJ did not err in finding that the Plaintiff failed to meet the criteria of section 12.02 of the Listing. Consequently, the ALJ's decision on this issue should be affirmed.

### B. Special Technique

In her brief, Jackson argues that the ALJ's rejection of Dr. Gleaves' opinions resulted in prejudicial error as it relates to the ALJ's special technique and Step Three conclusions. (Pl.'s Br. at 5.) Jackson claims that the ALJ erred while doing the special technique by failing to document objective evidence while doing the technique. (Pl.'s Br. at 13.) Specifically, Jackson argues that the ALJ erred by: (1) finding a "mild limitation" in her ability to interact with others

---

[4] Because the criteria of both Paragraphs A *and* B must be met to satisfy the Listing requirements, the ALJ, in finding that the claimant had not met the Paragraph B criteria, did not err in failing to analyze any evidence regarding Paragraph A.

11

and (2) finding a "moderate limitation" in her concentration, persistence, and pace. (Pl.'s Br. at 13–16.)

Federal regulations require that the ALJ follow mandatory steps when evaluating the severity of mental impairments in claimants. *See* 20 C.F.R. § 404.1520a(a). In evaluating mental disorders, the ALJ first considers whether a claimant has a medically determinable mental impairment. *See* 20 C.F.R. § 404.1520a(b)(1). To do so, the ALJ must specify the symptoms, signs, and laboratory findings that substantiate the presence of each impairment. 20 C.F.R. § 404.1520a(b)(1); *Boyd v. Apfel*, 239 F.3d 698, 705 (5th Cir. 2001). The regulations require the ALJ to evaluate the degree of functional loss resulting from the claimant's mental impairments. 20 C.F.R. § 404.1520a(c). If an impairment is found, the ALJ must evaluate the claimant's limitations in four functional areas: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting and managing oneself. *See* 20 C.F.R. § 404.1520a(c)(3).

After the ALJ rates the degree of functional limitation resulting from any mental impairment, the ALJ determines the severity of such impairment. 20 C.F.R. § 404.1520a(d). If the degree of functional loss falls below a specified level in each of the four areas, the ALJ must find the impairment is not severe at Step Two of the sequential evaluation process. 20 C.F.R. § 404.1520a(d)(1). If the ALJ finds that the mental impairment is severe at Step Two, then the ALJ must determine if it meets or is equivalent in severity to a listed mental disorder. 20 C.F.R. § 404.1520a(d)(2). To determine if it meets or is equivalent in severity to a listed mental disorder, the ALJ must compare the medical findings about the claimant's impairment and the rating of the degree of functional limitation to the criteria of the appropriate listed mental disorder. 20 C.F.R. § 404.1520a(d)(2). If the impairment is severe but does not meet or equal a

listed mental impairment, then the ALJ must conduct an RFC assessment. 20 C.F.R. § 404.1520a(d)(3); *see Boyd*, 239 F.3d at 705. The ALJ's written decision must incorporate pertinent findings and conclusions based on the technique and must include a specific finding of the degree of limitation in each of the functional areas described. 20 C.F.R. § 404.1520a(e)(4).

In this case, contrary to Jackson's claims, it is clear that the ALJ properly applied the special technique in analyzing Jackson's mental impairments. (Tr. 29–30.) In his decision, as set forth above, the ALJ found that Jackson had only mild limitation in the following functional areas: (1) understanding, remembering, or applying information; (2) interacting with others; and (3) adapting or managing oneself. (Tr. 22–23.) He also found that Jackson had moderate limitation in concentrating, persisting, or maintaining pace. (Tr. 23.) In reaching his decision, the ALJ thoroughly examined the evidence in the record, including the opinions of Dr. Gleaves, and provided the reasons for assigning them only limited weight. (*See* Tr. 22–25, 28–29.) While the ALJ did not specifically refer to Dr. Gleaves by name in his special technique analysis, the ALJ clearly referenced Dr. Gleaves' opinions at 7F (Tr. 456–66) multiple times when performing such analysis. (Tr. 23.)

In addition, later in his decision, the ALJ determined that Dr. Gleaves' opinions substantially overstated the actual extent of Jackson's psychological symptoms, stating:

> [Jackson] further admitted that she was capable of a wide range of activities, including driving, watching television, caring for her personal hygiene independently, shopping in stores, using a cell phone, and getting along with others. Such reported behavior alone directly contradicts Dr. Gleaves's apparent opinion that the claimant had marked limitation with concentrating and persisting on work-related tasks, interacting with others, or dealing with the normal pressures of a routine competitive work setting. . . .

(Tr. 29 (internal citations omitted).) The ALJ properly weighed all of the evidence in the record and accordingly chose to rely on the opinions of SAPC Jackson and SAPC Leaf in making his

special technique determination. (Tr. 24.) Because there is substantial evidence that supports the ALJ's disability determination and because he properly followed the "special technique" in evaluating Jackson's mental impairments, the Court concludes that remand is not required on this issue.

### C. Treating Physician Opinion

In her brief, Jackson also claims that the ALJ erroneously discredited the opinions of Dr. Anthony, who Jackson refers to as a "treating physician." (Pl.'s Br. at 17–18; *see* Tr. 16–19.) Specifically, Jackson claims that the ALJ erred by: (1) giving limited weight to Dr. Anthony's conclusions (Pl.'s Br. at 17); (2) relying on Dr. Anthony's medical notes, rather than her overall opinions (Pl.'s Br. at 18); (3) giving more weight to the "claimant's extended history of overall cognitive and emotional stability" than Dr.'s Anthony's opinion (Pl.'s Br. at 18–19); and (4) failing to weigh the factors set forth in 20 C.F.R. § 404.1527. (Pl.'s Br. at 19.)

As set forth above, the ALJ, in making his disability determination, reviewed the medical and other evidence in the record. As to Dr. Anthony's opinions, the ALJ, *inter alia*, stated:

> [T]o Dr. Anthony's opinion, the undersigned similarly points out that the claimant was able to sustain sufficient attention to even more difficult and complex questions during her July 2016 evaluation in spite of her concurrent scores of below average comprehension, cognitive processing speed, and memory. The claimant also presented in wholly intact cognitive and emotional condition elsewhere in May 2016 as well. Dr. Anthony's opinion that the claimant had a "significant impairment" in nearly all aspects of her life is therefore highly inconsistent with both his [sic] internal observations as well as the remainder of the medical record. In addition, and to both of Drs. Jackson and Anthony's examinations, the undersigned once again finds more persuasive the claimant's extended history of overall cognitive and emotional stability with the use of no more than conservative medication management. In addition, Dr. Anthony remarked upon additional symptoms of anxiety and agoraphobia which are not reflected elsewhere in the record.

(Tr. 29 (internal citations omitted).) In his decision, the ALJ also noted that Dr. Anthony's opinion was accorded limited weight due to "all of [her] respective inconsistencies with the

record." *Id.* Further, the ALJ concludes that Dr. Anthony's opinion "substantially overstate[s] the actual extent of the claimant's psychological symptoms." *Id.*

Contrary to Jackson's arguments, the ALJ did not err by failing to properly weigh the medical opinions of Dr. Anthony. To begin with, Dr. Anthony was not a treating physician as she only examined Jackson on one occasion. (*See* Tr. 593–606.) Thus, Dr. Gleaves is classified as a non-treating source in the context of Jackson's appeal, and the ALJ was only required to consider Dr. Gleaves' opinion as medical evidence to be weighed. *See Andrews v. Astrue*, 917 F. Supp. 2d 624, 637 (N.D. Tex. 2013) (stating that the ALJ is not required to give the opinion of a consultative examiner controlling weight).[5] Although Jackson disagrees with the amount of weight given to Dr. Anthony's opinions, the record contains substantial evidence that supports the ALJ's decision. (Tr. 29, *see* Tr. 580–82.) In this case, it is clear, as set forth above, that the ALJ thoroughly reviewed and considered Dr. Anthony's opinion. (Tr. 23–24, 28–29.) However, the ALJ ultimately decided not to give it controlling or significant weight as it was unsupported by the majority of the medical and examination records in the record, including medical evidence and opinions from the state agency medical consultants. (*See* Tr. 23–30.) Because substantial evidence supports the ALJ's decision, the ALJ did not err in affording "limited" weight to Dr. Anthony's opinion.

Jackson, in her brief, also suggests that the ALJ erred by improperly evaluating Dr. Anthony's opinion because he did not explicitly reference each of the six factors set forth in 20 C.F.R. § 404.1527(c). (Pl.'s Br. at 19.) While the ALJ was not required to apply the factors listed in 20 C.F.R. 404.1527(c) prior to giving Dr. Anthony's opinions very little weight because

---

[5] The Court notes that because Jackson's claim was filed prior to March 27, 2017, 20 C.F.R. 404.1527 is applicable to this case. *See* 20 C.F.R. 404.1527.

such requirement only applies to opinions of treating physicians,[6] the Court disagrees that the ALJ failed to do so. To begin with, the ALJ specifically stated in his decision that he "considered opinion evidence in accordance with the requirements of 20 CFR 404.1527." (Tr. 25.) As to factors one and two, where the ALJ is to evaluate the examining and treatment relationship between Jackson and Dr. Anthony, the ALJ stated that Dr. Anthony was Jackson's "examining physician" and referenced the examination records from Dr. Anthony's July 29, 2016 examination of Jackson. (Tr. 29–30, *See* Tr. 593–606.) As to factors three, four, and six under which the ALJ evaluates the supportability and consistency of the physician's opinion, as well as any other factors that "tend to support or contradict the opinion," the ALJ, as set forth above, provided specific instances of other treatment records and evidence in the record showing that Dr. Anthony's opinions were not consistent with much of the other evidence in the record. (Tr. 29, *see* 20 C.F.R. § 404.1527(c)(3), (4), (6).) As to factor five, more weight is generally given "to the medical opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist." 20 C.F.R. § 404.1527(c)(5). It is clear that the ALJ was aware that Dr. Anthony was a psychologist as the ALJ indicated Jackson was referred to Dr. Anthony by Jackson's neurologist for a neuropsychological evaluation and such evaluation indicated Dr. Anthony was a psychologist. (Tr. 28, 606.) Because the ALJ properly considered the opinions of Dr. Anthony, remand is not required.

---

[6] *See Sanchez v. Berryhill*, No. M-16-030, 2017 WL 2117526, at *5 (S.D. Tex. Mar. 31, 2017) ("The ALJ was not required to perform a detailed analysis of the "*Newton* factors" before declining to adopt or give significant weight to Dr. De Ferreire's findings and opinions because she is not a treating physician, but, rather, Dr. De Ferreire acted as a consultative examiner."); *Ruffins v. Collins*, No. 14-754-RLB, 2016 WL 617445, at *3 (M.D. La. Feb. 16, 2016) ("[T]he factors set forth in 20 C.F.R. 404.1527(c) are not applicable because Dr. Van Hook is not a treating physician.").

D.  **Onset Date**

In her brief, Jackson also argues that the ALJ's decision should be reversed because the ALJ failed to acknowledge that Jackson, at the hearing before the ALJ, had amended her onset date from October 1, 2012 to April 17, 2014. (Pl.'s Br. at 19–20; see Tr. 40–41.) Although the ALJ did not explicitly acknowledge the amended onset date in his decision, the evidence he referenced from the record was dated almost entirely after the amended onset date. (Tr. 17–32.) For this reason, even had the ALJ acknowledged the amended onset date, the decision would have remained the same.

Moreover, "[c]ourts need not reverse agency action because of harmless error." *Gibson v. Astrue*, No. 0:08-2011-HMH-PJG, 2009 WL 3757686, at *11 (D.S.C. Nov. 9, 2009) (finding that the ALJ's failure to amend the onset date in his opinion was harmless error); *see Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988) ("[P]rocedural perfection in administrative proceedings is not required."); *Carter v. Massey-Ferguson, Inc.*, 716 F.2d 344, 349 (5th Cir. 1983). Because the outcome of this decision would be unchanged had the ALJ acknowledged the amended onset date, the ALJ decision should not be remanded. *See Wallace v. Colvin*, No. 2:11-0100, 2014 WL 2117500, at *10 (M.D. Tenn. May 21, 2014) ("[E]ven though the ALJ erred in misidentifying the plaintiff's alleged disability onset date, the error was harmless because the ALJ's decision would have likely been the same."). Therefore, the ALJ's lack of acknowledgment of the amended onset date does not constitute reversible error.

## RECOMMENDATION

It is recommended that the Commissioner's decision be affirmed.

## NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions, and recommendation within fourteen (14) days after the party has been served with a copy of this document. The United States District Judge need only make a de novo determination of those portions of the United States Magistrate Judge's proposed findings, conclusions, and recommendations to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Services Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

## ORDER

Under 28 U.S.C. § 636, it is hereby **ORDERED** that each party is granted until December 4, 2019, to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation. It is further ORDERED that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further **ORDERED** that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED November 20, 2019.

_____
JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE

JLC/knv